IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of December 15, 2021, Subpoena Issued by the United States House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol <br><br> **DANIEL J. SCAVINO, JR.,** <br> c/o Brand Woodward Law <br> 1808 Park Road Northwest <br> Washington, District of Columbia 20010, <br><br> **PLAINTIFF,** <br><br> v. <br><br> **VERIZON COMMUNICATIONS INC.,** <br> c/o Verizon Security Subpoena Compliance <br> 180 Washington Valley Road <br> Bedminster, New Jersey 07921 <br><br> **DEFENDANT.** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) 1:22-cv-00018 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Daniel J. Scavino, Jr., by and through the undersigned counsel, brings this action for declaratory and injunctive relief alleging as follows:

### THE PARTIES

1. Plaintiff, Daniel J. Scavino, Jr. ("Plaintiff") is the recipient of correspondence from Defendant Verizon Communications Inc. ("Verizon") advising that certain phone records associated with the phone number Plaintiff maintains with Defendant Verizon have been subpoenaed by the United States House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee").

2. Defendant Verizon Communications Inc., is a Delaware Corporation with its principal place of business in New York City, New York. Plaintiff has been advised that communications regarding the subpoena in question are to be directed to Verizon's Verizon Security Subpoena Compliance division.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This case challenges the validity of a subpoena issued by the United States House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol. It raises claims regarding the scope of the investigative power of Congress under Article I of the United States Constitution, claims under the Stored Communications Act, 18 U.S.C. § 2701, and claims under the Telecommunications Act of 1996, 47 U.S.C. § 222.

4. Venue is proper before this court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims – the issuance of the subpoena at issue – was occurred within this District.

## FACTUAL ALLEGATIONS

5. In a well-known episode on January 6, 2021, a large group of protestors in Washington, D.C., entered the United States Capitol, breached security, and disrupted the counting of the Electoral College votes until order was restored. The United States Department of Justice has arrested and charged more than 725 individuals in connection with the events of January 6th.

6. On June 28, 2021, Speaker Nancy Pelosi introduced House Resolution 503, "Establishing the Select Committee to Investigate the January 6th Attack on the United States Capitol." Two days later, the House passed H. Res. 503.

7. H. Res. 503 instructs the Speaker of the House to appoint thirteen Members to the Select Committee and to designate one Member to serve as chair of the Select Committee. *See* H. Res. Sec. 2. Speaker Pelosi appointed and designated Rep. Bennie Thompson (D-MS 2nd Dis.) to serve as Chairman of the Select Committee.

8. H. Res 503 Section 3 establishes the Select Committee for three purposes:

   a. To investigate and report upon the facts, circumstances, and causes relating to the January 6, 2021, domestic terrorist attack upon the United States Capitol Complex (hereafter referred to as the "domestic terrorist attack on the Capitol") and relating to the interference with the peaceful transfer of power, including facts and causes relating to the preparedness and response of the United States Capitol Police and other Federal, State, and local law enforcement agencies in the National Capital Region and other instrumentalities of government, as well as the influencing factors that fomented such an attack on American representative democracy while engaged in a constitutional process.

   b. To examine and evaluate evidence developed by relevant Federal, State, and local governmental agencies regarding the facts and circumstances surrounding the domestic terrorist attack on the Capitol and targeted violence and domestic terrorism relevant to such terrorist attack.

   c. To build upon the investigations of other entities and avoid unnecessary duplication of efforts by reviewing the investigations, findings, conclusions, and recommendations of other executive branch, congressional, or independent bipartisan or nonpartisan commission investigations into the domestic terrorist attack on the Capitol, including investigations into influencing factors related to such attack.

9. H. Res. 503 Section 4 establishes three "functions" of the Select Committee: (1) to "investigate the facts, circumstances, and causes relating to the domestic terror attack on the Capitol"; (2) to "identify, review, and evaluate the causes of and the lessons learned from the domestic terrorist attack on the Capitol"; and (3) to "issue a final report to the House containing such findings, conclusions, and recommendations for corrective measures described in subsection (c) as it may deem necessary."

10. Subsection (c) of Section 4 describes three categories of "corrective measures": "changes in law, policy procedure, rules, or regulations that could be taken" (1) "to prevent future acts of violence, domestic terrorism, and domestic violent extremism, including acts targeted at American democratic institutions"; (2) "to improve the security posture of the United States Capitol Complex while preserving accessibility of the Capitol Complex for all Americans"; and (3) "to strengthen the security and resilience of the United States American democratic institutions against violence, domestic terrorism, and domestic violent extremism."

11. H. Res. 503 Section 5(c)(4) authorizes the Chair of the Select Committee to "issue subpoenas pursuant to clause 2(m) of Rule XI [*subpoena power*] in the investigation and study conducted pursuant to sections 3 and 4 of this resolution."

12. On December 15, 2021, Chairman Thompson, on behalf of the Select Committee, issued a subpoena to Defendant Verizon seeking records concerning phone numbers listed in "Section B, below."

13. On December 17, 2021, Defendant Verizon wrote Plaintiff, copying the undersigned counsel, to advise that it "ha[d] received a subpoena requiring the production of certain records associated with the phone number referenced above" and attaching "[a] copy of the subpoena" excluding "Section B, which identifies the phone number referenced above but also those of other Verizon subscribers."

14. In other words, nowhere within the copy of the Select Committee's subpoena provided to Plaintiff is Plaintiff's identify, or any other customer whose records are sought, disclosed. A copy of the subpoena provided to Plaintiff by Verizon is attached hereto as Exhibit A.

15. The Select Committee's subpoena instructs Defendant Verizon to produce subscriber information and cell phone data associated with Plaintiff's personal cell phone. The subscriber information requested includes subscriber names and contact information, authorized users, time of service provided, account changes, associated IP addresses, and other metadata. The cell phone data requested could include all calls, text messages, and other records of communications associated with the phone number. This data can be used for historic cell site analysis. The subpoena seeks this information from November 1, 2020, through January 31, 2021.

## COUNT I
### (Declaratory Relief Pursuant to 28 U.S.C. § 2201)

16. Plaintiff repeats, realleges, and incorporates the allegations in paragraphs 1 through 15 as if set forth herein.

17. Congress's broad "power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the legislative function." *McGrain v. Daugherty*, 273 U.S. 135, 174 (1927). Accordingly, Congress and its duly authorized committees may issue a subpoena where the information sought "is related to, and in furtherance of, a legitimate task of Congress," *Watkins v. United States*, 354 U.S. 178, 187 (1957), and the subpoena serves a "valid legislative purpose." *Quinn v. United States*, 349 U.S. 155, 161 (1955). At the same time, because Congress's subpoena power "is justified as an adjunct to the legislative process, it is subject to several limitations," *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020), limitations which stem directly from the Constitution. *Kilbourn v. Thompson*, 103 U.S. 168, 182-89 (1880).

18. Specifically, the Constitution permits Congress to enact only certain kinds of legislation, *see, e.g.,* U.S. Const. art. I, § 8, and Congress's power to investigate "is justified as an adjunct to the legislative process, it is subject to several limitations." *Mazars*, 140 S. Ct. at

2031.  These limitations include that Congress may not issue a subpoena for the purposes of "law enforcement" because "those powers are assigned under our Constitution to the Executive and the Judiciary," *Quinn*, 349 U.S. at 161, or to "try" someone "of any crime or wrongdoing, *McGrain*, 273 U.S. at 179; nor does Congress have any "general power to inquire into private affairs and compel disclosure," *McGrain*, 273 U.S. at 173-74, or the "power to expose for the sake of exposure," *Watkins*, 354 U.S. at 200.  Also importantly, Congressional investigations "conducted solely for the personal aggrandizement of the investigators or to 'punish' those investigated are indefensible."  *Watkins*, 354 U.S. at 187, *Mazars*, 140 S. Ct. at 2032.  Additionally, as the Supreme Court has recognized:  "[t]he Bill of Rights s applicable to [congressional] investigations as to all forms of government action," and the Select Committee may not "abridge[]. . . the First Amendment freedoms of speech, press, religion, or political belief and association" in the name of advancing its investigation.  *Watkins*, 354 U.S. at 188.  *See also United States v. Rumely*, 345 U.S. 41, 46-47 (1953).

19.     Thus, to ensure that a Congressional inquiry meets a "valid legislative purpose," an inquiring committee must define "with the same degree of explicitness and clarity that the Due Process Clause requires in the expression of any element of a criminal offense" its "jurisdictional pertinency" so as to avoid the "vice for vagueness."  *Watkins*, 354 U.S. at 206-09.  *See also id.* at 206 ("When the definition of jurisdictional pertinency is as uncertain and wavering as in the case of the Un-American Activities Committee, it becomes extremely difficult for the Committee to limit its inquiries to statutory pertinency.").

20.     The Select Committee has not demonstrated a "valid legislative purpose" justifying its need for a subpoena of private citizen data:  the subscriber information as well as connection records and records of session times and durations sought by its December 15, 2021

subpoena to Defendant Verizon. Consequently, the Select Committee cannot establish sufficient jurisdictional pertinence justifying the breadth of the Verizon subpoena's demand for private citizen data. It has not, because it can not.

21. House Counsel Douglas Letter summarized the purported purpose of the Select Committee as follows:

> [W]e need to figure out what was the atmosphere that brought . . . about [the events of January 6, including] the many attempts that were made before the election to try to build the nature of mistrust about the election itself, which goes to undermine our democracy, so that if President Trump did lose he would be able to say that his is unfair and to generate lots of anger and rage that led to January 6.

See H'ng T., *Trump v. Thompson*, No. 21-cv-002769 (Nov. 4, 2021).

22. Further, through its Members, the House Committee has embraced the role of an inquisitorial tribunal seeking evidence of criminal activity. By way of example, on December 23, 2021, Chairman Thompson told *The Washington Post* the Select Committee was investigating whether President Trump's actions on January 6, 2021, "warrant[s] a [criminal] referral."[1] Similarly, Rep. Elaine Luria (D-VA 2nd Dis.) told *CNN*: "[T]hat's exactly why we're conducting this investigation to find out all the facts, . . . and . . . hold people accountable who are responsible."[2] And Rep. Liz Cheney (R-WY At-Large) told *Rolling Stone*: "We must know what happened here at the Capitol. We must *also* know what happened *every* minute of

---

[1] Tom Hamburger, Jacqueline Alemany, Josh Dawsey, and Matt Zapotosky, Thompson Says Jan. 6 Committee Focused on Turmp's Hours of Silence During Attack, Weighing Criminal Referrals, *The Washington Post* (Dec. 23, 2021), *available at* https://www.washingtonpost.com/politics/january-6-thompson-trump/2021/12/23/36318a92-6384-11ec-a7e8-3a8455b71fad_story.html.

[2] Zachary Cohen and Annie Grayer, January 6 Committee Says it Would Make Criminal Referrals if 'Appropriate,' but that Could be a Long Way Off, *CNN* (Dec. 21, 2021), *available at* https://www.cnn.com/2021/12/21/politics/january-6-committee-criminal-referrals/index.html.

that day in the White House—*every phone call*, every conversation, every meeting leading up to, during, and after the attack."[3]

23. Accordingly, lacking any "valid legislative purpose" to seek the subscriber information as well as connection records and records of session times and durations sought by its December 15, 2021 subpoena to Defendant Verizon, the Select Committee's subpoena is unenforceable and this Court should issue an Order holding the subpoena ultra vires, unlawful, and unenforceable.

**COUNT II**
**(Declaratory Relief Pursuant to 28 U.S.C. § 2201)**

24. Plaintiff repeats, realleges, and incorporates the allegations in paragraphs 1 through 22 as if se forth herein.

25. Subject to specifically enumerated exceptions not applicable here, the Stored Communications Act provides that "a person or entity providing electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage to that service." 18 U.S.C. § 2702(a)(1).

26. Similarly, the Telecommunications Act of 1996 protects the confidentiality of "customer proprietary network information," which includes, *inter alia*, phone logs and location information, "[e]xcept as provided by law or with approval of a customer." 47 U.S.C. § 222.

27. The subscriber information as well as connection records and records of session times and durations sought by the Select Committee's December 15, 2021, subpoena to Defendant Verizon necessarily seeks the "contents of a communication while in electronic storage," or, in the alternative, because neither Plaintiff nor any law authorize the disclosure of

---

[3] Peter Wade, Cheney: Investigate Trump's 'Every Call, Every Conversation, Every Meeting' on Jan. 6, *Rolling Stone* (July 27, 2021), *available at* https://www.rollingstone.com/politics/politics-news/cheney-investigate-trump-capitol-attack-communications-1203084/.

these records, the Select Committee's December 15, 2021 subpoena is unenforceable and this Court should issue an Order holding the subpoena ultra vires, unlawful, and unenforceable.

## COUNT III
**(Injunctive Relief Pursuant to Rule 65 of the Federal Rules of Civil Procedure)**

28. Plaintiff repeats, realleges, and incorporates the allegations in paragraphs 1 through 26 as if set forth herein.

29. Because the Select Committee's December 15, 2021 subpoena to Verizon is ultra vires, unlawful, and unenforceable, in that it lacks any "valid legislative purpose" to seek the subscriber information as well as connection records and records of session times and durations, or is otherwise precluded from disclosing such records, Plaintiff is likely to succeed on the merits of this action.

30. Should this Court not prevent the disclosure of Plaintiff's subscriber information as well as connection records and records of session times and durations, Plaintiff is likely to suffer irreparable harm.

31. The balance of the equities weigh in Plaintiff's favor and the public interest favors against disclosure so as to prevent the unwarranted intrusion into the affairs of the public absent the requisite "valid legislative purpose" of any Congressional subpoena.

32. Accordingly, this Court should issue an Order enjoining Defendant Verizon from producing Plaintiff's records pursuant to the Select Committee's December 15, 2021, subpoena.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court to Order the following relief:

a. A declaratory judgment holding that the Select Committee's December 15, 2021 subpoena is ultra vires, unlawful, and unenforceable;

b.       An injunction prohibiting Defendant Verizon from providing Plaintiff's records to the Select Committee pursuant to its December 15, 2021 subpoena; and

c.       Any and all other relief that the court deems just and proper.

**[SIGNATURE ON NEXT PAGE]**

Dated: January 21, 2021                    Respectfully submitted,

                                                             */s/ Stanley E. Woodward, Jr.*
Stan M. Brand (D.C. Bar No. 213082)
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD, ATTORNEYS AT LAW
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Plaintiff Daniel J. Scavino, Jr.*