IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL J. SCAVINO, JR., | 1:22-cv-00018-DLF |
| PLAINTIFF, | |
| v. | |
| VERIZON COMMUNICATIONS INC., | |
| DEFENDANT. | |

**PLAINTIFF DANIEL J. SCAVINO'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Daniel J. Scavino ("Plaintiff"), by and through the undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully requests this court issue an Order, to 28 U.S.C. § 2201, holding the December 15, 2021, subpoena issued by the United States House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee") is ultra vires, unlawful, and unenforceable and, accordingly, enjoin Defendant Verizon Communications Inc. ("Verizon") from producing any records responsive to the subpoena.

I.     UNDISPUTED MATERIAL FACTS

Plaintiff is the longest-tenured aide to have served in Donald Trump's presidential administration, serving from January 20, 2017 to January 20, 2021.

On January 6, 2021, protestors in Washington, D.C. entered the United States Capitol, breached security, and disrupted the process of counting Electoral College votes and certifying the results of the 2020 Presidential Election. The United States Department of Justice took the lead on prosecuting cases related to the events of January 6, 2021, and currently have arrested and charged more than 725 individuals for their actions on that day.

United States House of Representatives Speaker Nancy Pelosi spearheaded the effort to establish the Select Committee to investigate the events leading up to January 6, 2021. On June 28, 2021, Speaker Pelosi introduced, and the House of Representatives passed, House Resolution 503, which created the Select Committee. In practice, the Select Committee is a partisan endeavor, with only 2 members of the 9-member committee being Republicans, and both Republican members being those who have voiced their dissatisfaction with former President Trump. H. Res 503 Section 5(c)(4) authorizes the Chair of the Select Committee, Bennie Thompsan (D-MS 2nd Dis.), to "issue subpoenas pursuant to clause 2(m) of Rule XI [subpoena power] in the investigation and study conducted pursuant to section 3 and 4 of this resolution."

On December 15, 2021, Chairman Thompson, on behalf of the Select Committee, issued a subpoena to Verizon seeking subscriber information (including but not limited to name, address, and contact information of all specific phone numbers, and the activation dates of each device on the account), connection records and records of session times and durations for 20 phone numbers. The requested information would include calls, text messages, and other records of communications associated with the numbers identified in the subpoena. The subpoena was accompanied by correspondence from Chairman Thompson advising that the Select Committee expected that the subpoenaed parties would be filing challenges to the subpoena that may affect Verizon's timeline for responding to the subpoena.

Plaintiff has been in constant communication with the Select Committee, noting specifically Plaintiff's concerns with the Select Committee's actions and that Plaintiff would seek legal remedy that prevents Verizon from enforcing the subpoena. On January 5, 2022, Plaintiff filed this legal complaint and sent correspondence to counsel for Verizon informing

them of the complaint and requesting that Verizon provide notice to Plaintiff before it takes any efforts to comply with the subpoena.

## II.   LEGAL STANDARD

"Congress has no enumerated constitutional power to conduct investigations or issue subpoenas, but [the Supreme Court] ha[s] held that each House has power 'to secure needed information' in order to legislate." *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020) (quoting *McGrain v. Daugherty*, 273, U.S. 135, 161 (1927)).  Accordingly, Congress and its duly authorized committees may issue a subpoena where the information sought "is related to, and in furtherance of, a legitimate task of Congress," *Watkins v. United States*, 354 U.S. 178, 187 (1957), and the subpoena serves a "valid legislative purpose." *Quinn v. United States*, 349 U.S. 155, 161 (1955).  At the same time, because Congress's subpoena power "is justified as an adjunct to the legislative process, it is subject to several limitations," *Mazars*, 140 S. Ct. at 2031, limitations which stem directly from the Constitution. *Kilbourn v. Thompson*, 103 U.S. 168, 182-89 (1880).

Specifically, the Constitution permits Congress to enact only certain kinds of legislation, *see, e.g.,* U.S. Const. art. I, § 8, and Congress's power to investigate "is justified as an adjunct to the legislative process, it is subject to several limitations." *Mazars*, 140 S. Ct. at 2031.  These limitations include that Congress may not issue a subpoena for the purposes of "law enforcement" because "those powers are assigned under our Constitution to the Executive and the Judiciary," *Quinn*, 349 U.S. at 161, or to "try" someone "of any crime or wrongdoing, *McGrain*, 273 U.S. at 179; nor does Congress have any "general power to inquire into private affairs and compel disclosure," *McGrain*, 273 U.S. at 173-74, or the "power to expose for the sake of exposure," *Watkins*, 354 U.S. at 200.  Also importantly, Congressional investigations

"conducted solely for the personal aggrandizement of the investigators or to 'punish' those investigated are indefensible." *Watkins*, 354 U.S. at 187, *Mazars*, 140 S. Ct. at 2032. Additionally, as the Supreme Court has recognized: "[t]he Bill of Rights s applicable to [congressional] investigations as to all forms of government action," and the Select Committee may not "abridge[]. . . the First Amendment freedoms of speech, press, religion, or political belief and association" in the name of advancing its investigation. *Watkins*, 354 U.S. at 188. *See also United States v. Rumely*, 345 U.S. 41, 46-47 (1953).

Thus, to ensure that a Congressional subpoena meets a "valid legislative purpose," an inquiring committee must define "with the same degree of explicitness and clarity that the Due Process Clause requires in the expression of any element of a criminal offense" its "jurisdictional pertinency" so as to avoid the "vice for vagueness." *Watkins*, 354 U.S. at 206-09, *cited in Mazars*, 140 S. Ct. at 2024. *See also id.* at 206 ("When the definition of jurisdictional pertinency is as uncertain and wavering as in the case of the Un-American Activities Committee, it becomes extremely difficult for the Committee to limit its inquiries to statutory pertinency.").

Finally, this Court must grant summary judgment, if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute is "genuine" if the evidence is such that a reasonable factfinder could return a verdict for the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" if it is capable of affecting the outcome of the litigation under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III.  ARGUMENT

The Select Committee's subpoena is unenforceable for three separate and distinct grounds.  First, the Select Committee has failed to establish that this particular subpoena meets any valid legislative purpose.  Second, the Select Committee has failed to overcome the requisite showing of a need that overcomes the burden imposed upon former President Trump for the records it seeks.  Third, the Select Committee's subpoena is unenforceable insofar as it violates the Stored Communications Act and/or the Telecommunications Act of 1996.

*a.  The Select Committee Failed to Articulate a Valid Legislative Purpose.*

In issuing its subpoena for Plaintiff's phone records, the Select Committee explained that its subpoena was pertinent because, its "investigation has revealed credible evidence that the phone numbers that are the subject of the subpoena were used by individuals who reportedly played a role in the planning, funding, organization, execution, and promotion of rallies on January 5th and 6th in Washington, D.C." (attached hereto as Exhibit A.)  It's unclear, therefore, that the Select Committee had any specific knowledge that it had subpoenaed Plaintiff's phone records.  To that end, the Select Committee's subpoena makes no further mention of what "credible evidence" ties Plaintiff to any such "planning, funding, organization, execution, and promotion."  It does not because it can not.  In its subpoena for testimony of, and documents from, Plaintiff, the Select Committee noted that it believed Plaintiff, "has reason to believe that [Plaintiff] ha[s] information relevant to understanding activities that led to and informed the events at the Capitol on January 6, 2021," including, "knowledge regarding the communications strategy of . . . former President [Trump] and his supporters leading up to the events on January 6." (Attached hereto as Exhibit B.)  With respect to the rallies on January 5th and 6th, the Select Committee's subpoena notes, "[y]our long service with the former President . . . suggest that you

Page 5

have knowledge concerning communications involving the 2020 presidential election and rallies and activities supporting and including the former President on January 6." Put simply, there is no evidence that Plaintiff had any role in the "planning, funding, organization, execution, and promotion" of the rallies on January 5th and/or 6th so as to warrant a subpoena for Plaintiff's phone records.

For a Congressional subpoena to be valid, it must *itself* have a "legitimate legislative purpose."  *Mazars*, 140 S. Ct. 2019, 2024 (quoting *Watkins*, 354 U.S. at 187).  In *Trump v. Thompson*, 20 F. 4th 10 (D.C. Cir. 2021), the D.C. Circuit recognized four (4) "valid legislative purpose[s]" of the Select Committee:

> Congress could (1) pass laws imposing more serious criminal penalties on those who engage in violence to prevent the work of government institutions; (2) amend the Electoral Count Act to shore up the procedures for counting electoral votes and certifying the results of a presidential election; (3) allocate greater resources to the Capitol Police and enact legislation to 'elevat[e] the security posture of the United States Capitol Complex;' or (4) revise the federal government's 'operational plans, policies, and procedures' for 'responding to targeted violence and domestic terrorism.

*Id.* at 42 (citations omitted).  The Select Committee makes no effort to tie its purported purpose in issuing its December 15, 2021, subpoena to the "valid legislative purpose[s]" recognized by the D.C. Circuit.  Baldly claiming that the phone numbers it subpoenaed information for, without more, "played a role in the planning, funding, organization, execution, and promotion of rallies on January 5th and 6th in Washington, D.C.," hardly meets the requisite showing for a valid Congressional subpoena.  *See Mazars*, 140 S. Ct. at 2036 ("[C]ourts should be attentive to the nature of the evidence offered by Congress to establish that a subpoena advances a legislative purpose.  The more detailed and substantive the evidence of Congress's legislative purpose, the better." (citing *Watkins*, 354 U.S. at 201)).  *See also Deutch v. United States*, 367 U.S. 456, 467-

469 (1961) ("[T]he questions propounded by the congressional committee [must be] in fact 'pertinent to the question under inquiry' by the committee.'").  Indeed, it is doubtful that the Select Committee knew that it had subpoenaed Plaintiff's phone records as there is no reference to the "burdens imposed on the President by a subpoena." *Id.*

> b. *The Subpoena Improperly Burdens Former President Trump.*

Even were the Court to find that the December 15, 2021, subpoena articulates a valid legislative purpose, it remains unenforceable insofar as it imposes an improper burden on former President Trump.  *See Mazars*, 140 S. Ct. at 2036 ("[C]ourts should be careful to assess the burdens imposed on the President by a subpoena[;] . . . burdens imposed by a congressional subpoena should be carefully scrutinized, for they stem from a rival political branch that has an ongoing relationship with the President and incentives to use subpoenas for an institutional advantage." *Id.  See also id.* at 2035 ("We therefore conclude that, in assessing whether a subpoena directed at the President's personal information is 'related to and in furtherance of, a legitimate task of Congress,' courts must perform a careful analysis that takes adequate account of the separation of powers principals at stake, including both the significant legislative interests of Congress and the 'unique position' of the President.").

As the *Mazars* Court also noted, "separation of powers concerns are no less palpable . . . simply because the subpoenas were issued to third parties." *Id.*  Assuming, for the sake of argument, that the Select Committee knew it was subpoenaing the phone records of the former President's Deputy Chief of Staff, among others who purportedly, "played a role in the planning, funding, organization, execution, and promotion of rallies on January 5th and 6th in Washington, D.C.," any function of Plaintiff in these activities would have necessarily been related to his official duties.  Accordingly, the Select Committee has an obligation to, "narrow the scope of

possible conflict between the branches," such that its subpoena is, "no broader than reasonably necessary to support Congress's legislative objective." *Id.* at 2036. As the Select Committee failed to recognize, let alone embrace, this obligation, its subpoena is unenforceable as to Plaintiff.

        c. *Telecommunications Laws Preclude the Production of Plaintiff's Records.*

Subject to specifically enumerated exceptions not applicable here, the Stored Communications Act provides that "a person or entity providing electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage to that service." 18 U.S.C. § 2702(a)(1).

Similarly, the Telecommunications Act of 1996 protects the confidentiality of "customer proprietary network information," which includes, *inter alia*, phone logs and location information, "[e]xcept as provided by law or with approval of a customer." 47 U.S.C. § 222.

The subscriber information as well as connection records and records of session times and durations sought by the Select Committee's December 15, 2021, subpoena to Defendant Verizon necessarily seeks the "contents of a communication while in electronic storage," or, in the alternative, because neither Plaintiff nor any law authorize the disclosure of these records, the Select Committee's December 15, 2021 subpoena is unenforceable and this Court should issue an Order holding the subpoena ultra vires, unlawful, and unenforceable.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court issue an Order holding that the Select Committee is ultra vires, unlawful, and unenforceable.

[SIGNATURE ON NEXT PAGE]

Dated: September 6, 2022					Respectfully submitted,

						       */s/ Stanley E. Woodward, Jr.*
						Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
						BRAND WOODWARD LAW, LP
						1808 Park Road NW
						Washington, DC  20010
						202-996-7447 (telephone)
						202-996-0113 (facsimile)
						Stanley@BrandWoodwardLaw.com

						*Counsel for Plaintiff Daniel J. Scavino, Jr.*

## CERTIFICATE OF SERVICE

On September 6, 2022, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.

Respectfully submitted,

*/s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Plaintiff Daniel J. Scavino, Jr.*